**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

DUSTIN REINARD, Individually and as
injured Parent of B.R. and K.R., and
MISTY REINARD,

         Plaintiffs,

vs.

CROWN EQUIPMENT CORP.,

         Defendant.

No. C 16-2094-MWB

**OPINION AND ORDER**
**REGARDING THE PARTIES'**
**MOTIONS IN LIMINE**

*Filed Under Seal*

_____

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................... 2

II.   **LEGAL ANALYSIS** .............................................................. 3

    A.   *Crown's Motions In Limine* ........................................... 3
        1.   *Testimony of Jason R. Kerrigan, Ph.D.* ..................... 3
        2.   *Other litigation or prior settlements* ......................... 5
        3.   *Improper arguments of counsel* ............................... 7
        4.   *Other matters*.................................................... 9

    B.   *The Reinards' Motions In Limine* ................................. 12
        1.   *General trial conduct evidentiary issues* ................... 12
            a.   *Undisputed issues* ....................................... 12
            b.   *Reprimands of Dustin Reinard* ....................... 12
            c.   *"Gratuitous" evidence about Crown* ................ 13
            d.   *"Hearsay documents"*.................................. 14
            e.   *Prior medical treatment evidence* .................... 14
        2.   *Case-specific evidentiary issues*.............................. 15
            a.   *Findings from Target's investigation*................. 15
            b.   *Blaming a non-party* .................................... 16
            c.   *"State of the art" defense* .............................. 16

|  | d. | *Assumption of the risk* | *18* |
|---|---|---|---|
|  | e. | *Military standards for stand-up forklifts* | *20* |
|  | f. | *"Misuse" of the forklift* | *21* |
|  | g. | *The BRC/SEA videos* | *23* |
|  | h. | *Testimony about the relationship between doors and accidents* | *24* |
|  | i. | *Evidence relating to OSHA standards* | *25* |
|  | j. | *Doing what other manufacturers do* | *27* |
|  | k. | *NIOSH evidence and independent rejection of doors by NIOSH and OSHA* | *28* |
|  | l. | *"Hearsay" from Crown's consultants* | *28* |
|  | m. | *Evidence of design awards* | *29* |
|  | n. | *Crown's "primary concern" is safety* | *30* |
|  | o. | *ATD testing shows catastrophic injuries will result* | *31* |
|  | p. | *ANSI/ASME standards* | *31* |
|  | q. | *Injury statistics* | *33* |
| C. | | *Proposed Limiting Instructions* | *34* |
| III. | | *CONCLUSION* | *34* |

## I.    INTRODUCTION

This case arises from a collision at a Target warehouse between a forklift operated by Dustin Reinard and a steel pole.  Mr. Reinard suffered serious injuries to his left leg resulting in its amputation.  Mr. Reinard and his wife, Misty Reinard, brought various products liability and breach of warranty claims against Crown Equipment Corporation, the manufacturer and seller of the forklift.  However, the Reinards have submitted jury instructions only on a design defect claim.  The Reinards seek compensatory damages

2

for Mr. Reinard's injury, loss of spousal consortium, and loss of parental consortium, as well as punitive damages. Crown asserts Mr. Reinard's comparative fault for the forklift accident. This matter is currently set for a jury trial to begin on July 16, 2018. On June 11, 2018, in anticipation of trial, the Reinards and Crown filed Motions In Limine, which are now before me.

## II. LEGAL ANALYSIS

### A. Crown's Motions In Limine

In a combined filing, Crown has filed four Motions In Limine. The Reinards resist some, but not all, of these Motions. I will consider them in turn.

#### 1. Testimony of Jason R. Kerrigan, Ph.D.

In its Motion In Limine #1, Crown seeks exclusion of the testimony of one of the Reinards' experts, Jason R. Kerrigan, Ph.D. This is one of the most contentious of the evidentiary issues now before me. Indeed, it is the only one of Crown's Motions In Limine for which Crown filed a supporting brief.

Crown asserts that Dr. Kerrigan will offer opinions on the following three matters: (1) injury potential testing for stand-up rider forklifts using anthropomorphic test devices (ATDs, better known as crash test dummies); (2) the potential ability of stand-up forklift operators to mitigate or avoid injury during off-dock and tipover events; and (3) whether stand-up rider forklift operators should remain in the operator compartment during off-dock and tipover events.[1] Crown contends that these opinions should be excluded,

_____

[1] Mr. Reinard's forklift accident did not involve either an off-dock or a tipover event, but a collision. As I understand it, the potential for injury in off-dock and tipover events involving stand-up rider forklifts is arguably relevant to this case, because the parties dispute whether the Reinards' proposed safer design of the stand-up forklift, with doors on the operator compartment, would actually increase the potential for injury in different kinds of accidents, such as off-dock and tipover events.

3

because they are unreliable, where Dr. Kerrigan has conducted no testing or other investigation to support his opinion that an operator should remain in the operator compartment in the event of a tipover or off-dock event; Dr. Kerrigan seemed to acknowledge the uncertainty surrounding this opinion, by qualifying his testimony and admitting the lack of concrete support for it; Dr. Kerrigan's opinion is not generally accepted by relevant engineering and scientific communities; and, as such, Dr. Kerrigan's opinion is nothing more than *ipse dixit*.

The Reinards contend that Dr. Kerrigan's testimony is important, because it will demonstrate the "fraud" in Crown's claim that catastrophic injuries are predicted by the ATD testing that has been done in this field. Specifically, they argue that Dr. Kerrigan will help the jury understand that the ATD studies do not *predict* human injuries, but only the *potential* for injuries, and that an ATD does not mimic what a human would do for self-preservation in tipover or off-dock events. They also argue that Dr. Kerrigan's testimony is important to show that there is really no scientific support for the argument against safety doors. They contend that Dr. Kerrigan is well-qualified to offer such opinions on the basis of his training and experience and his review of ATD testing and forklift accidents, such that he can demonstrate that what Crown relies on is junk science.

As was the case with Crown's prior challenges to two of the Reinards' other experts, Crown's Motion In Limine #1 to exclude the testimony of Dr. Kerrigan, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), is **denied**. Contrary to Crown's arguments, Dr. Kerrigan's opinions are based on more than *ipse dixit*. *See American Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) ("'[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.'" (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Rather, after reviewing the Reinards'

4

extensive response to the motion to exclude the testimony of Dr. Kerrigan, my preliminary assessment is that Dr. Kerrigan is qualified to state the proffered opinions, the reasoning and methodology underlying the challenged opinions are scientifically valid, and his reasoning and methodology can be applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93 (first step in the court's "gatekeeper" function under Rule 702); *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (products liability case explaining the "gatekeeping function"). I am also convinced that Dr. Kerrigan's testimony is relevant and will aid the trier of fact. *Daubert*, 509 U.S. at 592 (second step in the analysis). I simply do not accept Crown's premise that an expert can only demonstrate the flaws in other experts' opinions if he has engaged in testing of some alternative.

In short, this is yet another case in which "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Kuhn*, 686 F.3d at 625 (quoting *Daubert*, 509 U.S. at 596). Crown's challenges indicate the bases for attempting to impeach Dr. Kerrigan, but not grounds for excluding his opinions altogether. Furthermore, I reject Crown's contention, in their objection to Dr. Kerrigan's testimony in the parties' Proposed Final Pretrial Order, that Dr. Kerrigan's testimony is not proper rebuttal testimony. To the contrary, in my view, Dr. Kerrigan's testimony will only be admissible as rebuttal testimony, if Crown offers evidence of ATD testing in its case-in-chief.

### 2. Other litigation or prior settlements

In its Motion In Limine #2, Crown contends that the Reinards should be precluded from referring to or using evidence from other lawsuits brought against Crown or other manufacturers of stand-up forklifts, because such evidence is immaterial and more prejudicial than probative, within the meaning of Rules 402 and 403 of the Federal Rules

of Evidence.  The Reinards agree that they will not offer verdicts or settlements in prior cases or read testimony of victims of other events into the record.  They argue, however, that evidence of other similar incidents and the testimony from trials relating to substantially similar events should not be excluded, because it is relevant to show the defective nature of the forklift; notice to Crown of the defects; the ordinary use of the forklifts; Mr. Reinard was not careless; the expertise of their experts, if they have previously testified, and the bias of Crown's experts, if they have previously testified; Crown's knowing conduct in the face of accidents, as a basis for punishment of Crown; and the ineffectiveness of Crown's warnings.

I agree with the Reinards that, at least as a general category of evidence, this evidence is relevant and not more prejudicial than probative, because it does go to issues in this case and, if properly presented and limited, with proper instructions, is not unduly prejudicial.  As the Eighth Circuit Court of Appeals has explained,

> [Other similar instances (OSI)] evidence "may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1081 (8th Cir. 2000); *see* Fed. R. Evid. 401 (evidence must be relevant). "Evidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1332 (8th Cir. 1985). An OSI need not "occur in precisely the same manner in order to qualify as being substantially similar." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 554 (D.C. Cir. 1993).

*Adams v. Toyota Motor Corp.*, 867 F.3d 903, 911 (8th Cir. 2017), as corrected (Aug. 14, 2017) (footnote omitted).  Thus, Crown's Motion In Limine #2 is **denied,** *but without prejudice* to challenges to specific evidence as irrelevant, prejudicial, or cumulative.

6

That does not settle the matter, however. As to the "similarity" requirement, the court explained,

> "[T]here are no hard or fast rules as to what degree of similarity there must be to make the evidence admissible." *Henwood v. Chaney*, 156 F.2d 392, 397 (8th Cir. 1946). Rather, in determining the admissibility of OSI evidence, the appropriate focus is on all of the "circumstances" surrounding the OSI evidence, not necessarily any specific similarity. *See Torbit v. Ryder*, 416 F.3d 898, 903 (8th Cir. 2005); *Hale*, 756 F.2d at 1332; *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1147–48 (10th Cir. 2009).

*Adams*, 867 F.3d at 913. Thus, I must establish some pretrial procedure to determine whether other specific incidents offered by the Reinards are sufficiently similar to be admissible.

Not later than **Monday, July 9, 2018,** the Reinards shall file a designation of the specific other similar instances evidence that they intend to offer, with an explanation of how it meets the requirements for OSI admissibility. Not later than **Wednesday, July 11, 2018,** Crown shall file a response to the Reinards' designation. I will then attempt to rule, pretrial, on which designated OSI evidence is admissible.

### 3. Improper arguments of counsel

In its Motion In Limine #3, Crown seeks exclusion, pursuant to Rules 402 and 403, of improper arguments of the Reinards' counsel, including arguments about amounts expended by Crown in defending this action or arguments equating Crown's conduct with the conduct of other corporations. Somewhat more specifically, Crown seeks to exclude any argument or reference, by counsel or witnesses, that (1) injects the concept of the "big corporation" into this case; (2) suggests that Crown be associated with, or likened to, high profile corporate defendants such as Enron, Ford, Firestone, etc., or mentions the highly publicized lawsuits involving those corporations; and/or (3) otherwise

7

insinuates that the mere fact that Crown is a corporation signifies a disregard for user safety or a heightened interest in profit motives at the expense of operator safety.

The Reinards represent that they will not suggest that, just because Crown is a corporation, it does not care about safety, or offer evidence of or ask about Crown's legal expenses. The Reinards make more qualified representations that they will not to refer to other kinds of evidence or make other arguments that they believe are encompassed by this motion. They agree not to talk about Crown's size, except to the extent it relates to punitive damages or in response to any argument by Crown that it is a "mom and pop company from a little town in Ohio." They agree not to suggest that Crown is "connected" to Enron or Firestone, although they contend that Crown does have a relationship with Ford, because Ford told Crown that doors are safe and that Crown's ATD testing is not persuasive, and they contend that they should also be allowed to make analogies to well-known corporate conduct to explain and put in context Crown's decision not to install doors. They also assert that the amount that Crown has paid experts, instead of seeking a better design, goes to bias and credibility of witnesses and Crown's excuses.

I agree with the Reinards that they may present evidence of Crown's size and financial condition, as those matters may relate to punitive damages, and that they may impeach experts with evidence of or inquiries about how much they have been paid to render opinions in this case and any other cases in which they have appeared as experts. This evidence is relevant and not unfairly prejudicial, where it goes to factors properly considered in this case, such as punitive damages, in the case of Crown's size and financial condition, and credibility of experts, in the case of what experts have been paid and how frequently they have testified as experts. Thus, to the extent that Crown's Motion In Limine #3 was intended to preclude such evidence, it is **denied**. Also, it is not clear to me precisely what "evidence," if any, is at issue that injects the concept of the "big corporation" into this case, and/or otherwise "insinuates" that the mere fact that

8

Crown is a corporation signifies a disregard for user safety or a heightened interest in profit motives at the expense of operator safety. Therefore, Crown's Motion In Limine #3 is **denied** *without prejudice* as to any such evidence.

The other matters that Crown seeks to exclude are not actually evidence, but arguments and "insinuations." District courts have the authority to control arguments of counsel, such as closing arguments, particularly arguments that are unwarranted or injurious. *See, e.g., Brown v. Davis*, 813 F.3d 1130, 1139 (8th Cir. 2016). Therefore, I caution both the Reinards and Crown not to engage in characterization of the evidence, for example, by referring to Crown as a "mom and pop company" or a "hometown employer," or as an example of the conduct of "big corporations," or by comparing Crown or its conduct to the companies and conduct involved in well-known corporate scandals. Such characterizations have no relevance, as they are not evidence, they do nothing to make any fact at issue more or less likely to be true, and they are potentially inflammatory and injurious. *Id.*

### 4.    *Other matters*

In its Motion In Limine #4, Crown seeks exclusion of several categories of evidence pursuant to Rules 402 and 403. I will address each category in turn.

Crown seeks exclusion of evidence that it may be protected by a policy of insurance covering the incident in question. The Reinards agree that they will not offer any such evidence or references to Crown's insurance coverage. Thus, part (a) of Crown's Motion In Limine #4 is **granted**.

Crown seeks exclusion of any inquiry of prospective jurors as to any connection they may have with the insurance industry. Crown argues that the Reinards' counsel can address concerns about connections to the insurance industry, for purposes of selecting jurors, by asking each individual juror about his or her occupation and past occupations, and those of others in his household, without injecting the issue of insurance into the

9

case. The Reinards object to foreclosing questions that would enable them to determine the employment of jurors and any connection jurors may have to the insurance industry, which they argue goes to bias and suitability of jurors. The Reinards assert that obtaining the information of employment suggested by Crown is not enough.

Contrary to Crown's contentions that such questions would improperly inject the issue of insurance into the case, I conclude that straightforward questions about whether potential jurors have any connection with the insurance industry are both proper and not likely to be unfairly prejudicial. The Reinards are entitled to know the current and past occupations of jurors and members of their households to assess their suitability as jurors and straightforward questions about any connection jurors or the members of their household may have with the insurance industry would not, in and of themselves, be inflammatory or otherwise improper. FED. R. EVID. 402, 403. Thus, part (b) of Crown's Motion In Limine #4 is **denied**.

Next, Crown seeks exclusion of any inquiry of prospective jurors as to whether they would answer questions on damages in accordance with the evidence regardless of who pays the damages or when they will be paid, or whether they will ever be paid, or any similar version of such inquiry. Crown contends that such inquiries would improperly inject the implications of insurance into the suit, so such matters should not be referred to either during the trial, *voir dire*, or argument to the jury. The Reinards represent that they will not make any such inquiries. Thus, part (c) of Crown's Motion In Limine #4 is **granted**.

Crown also seeks exclusion of any request from the Reinards' counsel during the course of this trial for the production of items from the file of Crown's counsel. Crown argues that the Reinards have had ample opportunity to pursue discovery. The Reinards represent that they will not ask for items from the file of Crown's counsel, except in the circumstance where they know something is in the exhibit file, but they can't find their

own copy. Part (d) of Crown's Motion In Limine #4 is **granted**, although I would hope that, as a matter of courtesy, the parties would be willing to help each other find copies of exhibits one or the other of them cannot locate immediately in their own files.

Crown also seeks exclusion of any question or statement relating to the failure of Crown to call any witness during the trial. The Reinards object on the ground that a comment on a failure to call a witness within Crown's control is "fair." The parties give this issue short shrift. As the Eighth Circuit Court of Appeals explained, "The absent witness rule, which finds its origins in the common law, allows an adverse inference to be drawn from the failure of a witness, who is within control of an adverse party, to appear at trial and testify." *N.L.R.B. v. MDI Commercial Servs.*, 175 F.3d 621, 632 (8th Cir. 1999) (citing *Meier v. Commissioner*, 199 F.2d 392, 396 (8th Cir. 1952)). "This inference is weighed against the party who controls the witness." *Id.* However, "the absent witness rule should not apply where the witness is equally available to both parties," and the rule "is to be applied with caution." *Id.* (citing *Mammoth Oil Co. v. United States*, 275 U.S. 13, 52 (1927)). Part (e) of Crown's Motion In Limine #4 is **granted**, to the extent that the Reinards may not comment on the failure of Crown to call or not call any witness during the trial, in the absence of a showing, outside the presence of the jury, that the witness is within Crown's control and not equally available to the Reinards.

Part (f) of Crown's Motion In Limine #5 is **granted**, because the Reinards represent that they will not offer any comment or evidence about attorney fees to be paid from any recovery. Likewise, part (g) of Crown's Motion In Limine #5 is **granted**, because the Reinards agree that there should be no comment that either party has filed a motion to exclude evidence.

11

### B.    The Reinards' Motions In Limine

In their "Master Motions In Limine," the Reinards have asserted forty-one Motions In Limine under two headings: "General Trial Conduct Evidentiary Issues" and "Specific Evidentiary Issues Relating To Fault And Design Issues." Crown disputes the admissibility of some, but not all, of the challenged evidence.[2]

### 1.    General trial conduct evidentiary issues

Under "General Trial Conduct Evidentiary Issues," the Reinards assert fourteen Motions In Limine. I will consider them in turn or, where appropriate, in groups of similar or related issues.

### a.    Undisputed issues

As to the first ten Motions In Limine under the first heading, Crown's response is essentially the same: Crown does not intend to introduce such evidence or argument, but if such evidence becomes relevant, Crown will alert the court and seek a ruling on admissibility at that time. Thus, the Reinards' first ten Motions In Limine under the heading "General Trial Conduct Evidentiary Issues" are **granted.**

### b.    Reprimands of Dustin Reinard

In their Motion In Limine #11 under this heading, the Reinards argue that evidence of how Mr. Reinard operated a forklift in the past, including disciplinary actions shown in "Exhibits 202 and 203"—now identified as Defendant's Trial Exhibits 1125 and 1126, respectively—is not relevant, because it does not show habit or usual practice, and any

---

[2] Crown argues that I should not consider arguments on various evidentiary matters in the Reinards' Motions In Limine that the Reinards say can be found in their Trial Brief, but should only consider arguments offered with their Motions In Limine. Crown argues that the Trial Brief is not timely support for the Motions In Limine. I have considered arguments in the Reinards' Trial Brief, filed two weeks after the Reinards filed their Motions In Limine, to the extent such arguments are clarifying or in the nature of replies to Crown's arguments.

slight probative value such evidence has is outweighed by the possibility of unfair prejudice. Crown contends that this motion is premature, because if the Reinards offer testimony that Mr. Reinard is a safe forklift operator with a safe operator performance record, Crown should be entitled to cross-examine Mr. Reinard regarding his prior history operating a forklift at Target. The parties have identified only two safety citations three or four years before the event at issue, here, that may or may not involve conduct similar to Mr. Reinard's conduct at the time of the accident. These two citations appear to me to have relatively slight probative value, because of their lack of a closer temporal relationship to the event at issue and their relative infrequency over the time Mr. Reinard was employed as a forklift driver. Nevertheless, I agree with Crown that this motion is premature, because Crown represents that it will use the challenged evidence only for cross-examination, if the Reinards offer testimony that Mr. Reinard is a safe forklift operator. Thus, the Reinards' Motion In Limine #11 under this heading is **denied** *without prejudice*.

    *c.*    *"Gratuitous" evidence about Crown*

   In their Motion In Limine #12 under this heading, the Reinards seek to exclude evidence of the financial impact of Crown on its home community and the fact that there are only 6,000 residents in that community, because the Reinards contends such evidence is irrelevant. The Reinards also dispute any contention that Crown is a "family business" and point out that Crown has over 6,000 employees. Thus, they argue that evidence that Crown is the biggest employer in its hometown or that it is a family business should be excluded as "gratuitous," irrelevant, and intended only to gain sympathy. Crown argues that it is entitled to introduce itself to the jury and to explain who it is. It argues that evidence that it is the largest employer in its hometown and/or that it is a family-owned business should not be excluded, because the jury will be instructed that the fact that Crown is a corporation should not affect the jury's decisions.

13

In my view, the instruction on fair treatment of corporations on which Crown relies does not mean that Crown is necessarily entitled to introduce any and all evidence about itself. I also struggle to see the relevance of evidence that Crown is the largest employer in its hometown and/or that it is a family-owned business, because I do not see how such evidence makes any fact material to the case any more or less likely. *See* FED. R. EVID. 401, 402. Evidence intended only to curry sympathy invites jurors to decide the case on an improper basis. *See* FED. R. EVID. 403 & Advisory Committee Notes; *United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014). Thus, the Reinards' Motion In Limine #12 under this heading is **granted**, absent some showing, outside the presence of the jury, that such evidence is admissible for a proper purpose.

### d.    *"Hearsay documents"*

In their Motion In Limine #13 under this heading, the Reinards seek exclusion of "numerous documents . . . that are patently hearsay," apparently including documents relied upon by experts. Crown argues that the Reinards have failed to identify the specific evidence at issue. I agree with Crown. There is simply insufficient basis for me to determine whether any documents that might be encompassed by this motion are or are not admissible. The Reinards' Motion In Limine #13 under this heading is **denied** as vague and overbroad. I note, however, that while experts may rely on documents that are otherwise inadmissible in reaching their opinions, the documents themselves do not thereby become admissible. *See* FED. R. EVID. 703. Thus, if documents used by experts are marked as exhibits, for the sake of convenient reference, they will not be provided to the jury unless expressly admitted.

### e.    *Prior medical treatment evidence*

In their Motion In Limine #14 under this heading, the Reinards seek exclusion of evidence of Mr. Reinard's prior medical treatment from 1990, when he was a minor, and subsequent inpatient and outpatient care, because such evidence is irrelevant to his claims

14

in this case and unduly inflammatory. Crown represents that it does not intend to offer such evidence, unless the Reinards offer evidence about Mr. Reinard's mental health, which would entitle Crown to cross-examine him about his mental health history. Crown argues that this motion is premature, because it is not clear what evidence offered by the Reinards might put the challenged evidence at issue. I agree with Crown. At this point, pretrial, I cannot determine whether any of the evidence that might be encompassed by this motion is or is not admissible. The Reinards' Motion In Limine #14 under this heading is **denied** as premature.

## 2. *Case-specific evidentiary issues*

The second heading in the Reinards' "Master Motions In Limine" is "General Trial Conduct Evidentiary Issues." The Reinards assert twenty-seven Motions In Limine under this heading.

### a. *Findings from Target's investigation*

In their Motion In Limine #1 under this heading, the Reinards seek exclusion of evidence and argument related to Target's findings about the cause of Mr. Reinard's accident, which were that his injuries were caused by his leaving his left foot hanging outside the confines of the driver's compartment of the forklift. The Reinards argue that this evidence is not based on any "scientific work," does not relate to whether the forklift is defective, and is an expert opinion, but no one at Target was designated as an expert. The Reinards argue that this evidence should be excluded pursuant to Rules 403, 702, and 802. Crown counters that people involved in the Target investigation are fact witnesses and that they are entitled to testify from personal knowledge about the accident, the investigation, and the results. Crown also argues that their opinions are admissible lay opinions pursuant to Rule 701. Crown contends that this evidence is directly relevant to the jury's determination of whether the forklift is defective and Mr. Reinard's comparative fault. Crown also argues that such evidence is not so confusing that it should

be excluded, particularly where the Reinards will have the opportunity to cross-examine the witnesses in question. Finally, Crown argues that this evidence is not inadmissible hearsay, because numerous exceptions to the hearsay rule apply: testimony from personal knowledge; conclusions of the investigation (not offered for their truth); and conduct and records in the ordinary course of business.

I agree with Crown that this evidence is relevant as evidence of fact witnesses and lay opinion evidence, is not unduly confusing, and—subject to timely objections—is not obviously barred by the hearsay rule, but likely admissible pursuant to applicable exceptions. The Reinards' Motion In Limine #1 under this heading is **denied**. The Reinards may, of course, offer timely objections to particular items of such evidence or testimony when it is offered, if they have a specific basis for such objections.

### b. *Blaming a non-party*

In their Motion In Limine #2 under this heading, the Reinards seek exclusion of any allegations that some other person or entity is at fault, on the basis of surprise, because Crown has not identified any other person or entity as contributing to the event in response to discovery requests. Crown represents that it does not intend to introduce such evidence or argument, but if such evidence becomes relevant, Crown will alert the court and seek a ruling on admissibility at that time. Thus, the Reinards' Motion In Limine #2 under this heading is **granted.**

### c. *"State of the art" defense*

In their Motion In Limine #3 under this heading, the Reinards seek exclusion of evidence supporting a "state of the art" defense as to the forklift, its warnings, or its instructions, because Crown did not plead such a defense and such a defense lacks proof. Crown argues that it did plead such a defense by raising a comparative fault defense in its answer, which encompasses "state of the art."

16

Crown appears to me to be wrong. As Crown acknowledges, IOWA CODE § 668.1 defines "fault" as follows:

> One or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

IOWA CODE § 668.1. "State of the art" is not a negligent or reckless act of the plaintiff, nor is it enumerated as a defense expressly encompassed by "fault." Rather, "state of the art" is expressly identified, in a separate statutory provision, as a *defense* that must be "plead[ed] and prove[d]." IOWA CODE § 668.12(1); *Hughes v. Massey-Ferguson, Inc.*, 522 N.W.2d 294, 298-99 (Iowa 1994) (Ternus, J., joined by Harris and Lavorato, JJ., concurring) (IOWA CODE § 668.12 "makes state of the art an affirmative defense that the defendant must plead and prove").[3] Because Crown does not assert that it specifically

---

[3] The parties in this case have addressed "state of the art" only as a defense. In the 2017 version of Iowa Civil Jury Instruction 1000.11, on the affirmative defense of state of the art, the committee stated, "This Instruction is withdrawn. *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159 (Iowa 2002) makes 'State of the Art' an element of the plaintiff's proof in product liability cases, but [it] remains an affirmative defense under Iowa Code section 668.12." This comment is curious, because it is unclear how "state of the art" could be both an element of the plaintiff's claim, on which the plaintiff would bear the burden of proof, and an affirmative defense, on which the defendant bears the burden of proof. It is also curious, because there is no mention of "state of the art" anywhere in *Wright*, as either an element of a products liability claim or as a defense. Rather, the court's conclusion as to the elements of the plaintiff's claim was as follows:

> In summary, we now adopt Restatement (Third) of Torts:
> Product Liability sections 1 and 2 for product defect cases.

(Footnote continued . . .

pleaded a "state of the art" defense or point to any part of its Answer that referred to such a defense, the Reinards' Motion In Limine #3 under this heading is **granted.**

### d.  *Assumption of the risk*

In their Motion In Limine #4 under this heading, the Reinards seek exclusion of evidence or argument that Mr. Reinard assumed the risk of being injured. The Reinards argue that, although Crown's experts have opined that Mr. Reinard's conduct was "volitional," none has opined that Mr. Reinard knowingly inserted his foot between the forklift and post with the forethought that doing so would expose him to injury, as required for an "assumption of the risk" defense to lie. The Reinards contend that, without evidence of a subjective belief by Mr. Reinard that he was voluntarily doing a dangerous act that could cause him injury, assumption of the risk is irrelevant. Crown

---

> Under these sections, a plaintiff seeking to recover damages on the basis of a design defect must prove "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe." *Id*. § 2(b); *accord Hawkeye Bank v. State*, 515 N.W.2d 348, 352 (Iowa 1994) (requiring "proof of an alternative safer design that is practicable under the circumstances" in negligent design case); *Hillrichs*, 478 N.W.2d at 75 (requiring "proof of an alternative safer design" under a theory of enhanced injury caused by a design defect).

*Wright*, 652 N.W.2d at 169. A "reasonable alternative design" would presumably be one that did *not* exceed the state of the art. Nevertheless, because the parties, here, have only addressed "state of the art" as a defense, either as encompassed within comparative fault or as a separate defense, and I have concluded that Crown did not plead a "state of the art" defense as expressly required by IOWA CODE § 668.12, I need not be concerned with the form of a jury instruction on such a defense in this case.

contends that the Reinards rely on a case decided prior to the adoption of comparative fault in Iowa by IOWA CODE § 668.1, so that unreasonable assumption of the risk must now be included as an element of the statutory comparative fault analysis. Crown argues that Mr. Reinard's assumption of the risk is relevant and admissible in this case.

Crown misses the point. The question is not whether "assumption of the risk" is a form of "fault" under Iowa's comparative fault scheme. Rather, the question is whether Crown has identified any evidence that would demonstrate (or raise a jury question) that Mr. Reinard assumed the risk of injury in operating the forklift. As the Iowa Supreme Court explained,

> Our court has relied on the drafter's comments to the Uniform Act in construing the Iowa act. *See, e.g., Baldwin v. City of Waterloo*, 372 N.W.2d 486, 493 (Iowa 1985). The drafters of the Uniform Act said this about assumption of risk:
>
>> "Assumption of risk" is a term with a number of different meanings—only one of which is "fault" within the meaning of this Act. This is the case of unreasonable assumption of risk, which might be likened to deliberate contributory negligence and means that the conduct must have been voluntary and with knowledge of the danger.
>
> Unif. Comparative Fault Act § 1 cmt., 12 U.L.A. 125, 126 (2008). The drafters thereby equate "assumption of risk" with "deliberate contributory negligence," encompassing voluntary conduct undertaken with knowledge of the danger.

*Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 115 (Iowa 2011). Thus, the question is whether Crown has any evidence of *both* (1) voluntary action by Mr. Reinard; and (2) his knowledge of the danger. Crown has not identified any evidence that Mr. Reinard knew of the danger of operating the forklift with his foot in a position where it might be injured in a collision with a pole.

19

Thus, the Reinards' Motion In Limine #4 under this heading is **granted.**  Until and unless Crown makes an offer of proof, outside the presence of the jury, that Mr. Reinard had the necessary knowledge of danger, it cannot assert assumption of the risk as comparative fault.

### e. *Military standards for stand-up forklifts*

In their Motion In Limine #5, the Reinards seek exclusion of evidence or argument that the forklift is not defective, because it satisfied military standards for stand-up forklifts.  They argue that military specification MIL-T-21643, which prohibits doors on forklifts, was cancelled on June 25, 2012; Target, where Mr. Reinard was working, is not a military user; and Crown's Rule 30(b)(6) witness, Mr. Grisez, testified that military standards are not relevant.  Thus, the Reinards argue that military standards have no probative value and are likely to cause confusion.  Crown argues that the military standards are relevant and not unduly confusing, because Crown considered those specifications and standards as part of its analytical process for determining the safest design for its stand-up rider forklifts.  Crown argues that it should be allowed to show the extent and sophistication of its design methodology, as it relates to either a design defect or punitive damages.  Although Target is not a military user, Crown argues that the military standards apply to warehouses, such as warehouses for military commissaries, not unlike Target's warehouse.  Crown also argues that the Reinards have failed to demonstrate how this evidence would be unduly confusing.

I conclude that military standards, while perhaps marginally relevant, should nevertheless be excluded pursuant to Rule 403.  As the Reinards point out, the military standard in question was cancelled before Mr. Reinard's accident, he was not using the forklift in a military situation, and Crown's own Rule 30(b)(6) witness has testified that military standards are irrelevant.  Moreover, the reasons why the military might prefer a forklift with no doors may depend entirely on military circumstances not present in

civilian use.  Exploring these issues invites a mini-trial out of proportion to any relevance of the evidence.  Thus, I conclude that military standards evidence should be excluded as confusing the issues, misleading the jury, likely to cause undue delay, and wasting time. FED. R. EVID. 403.

The Reinards' Motion In Limine #5 is **granted.**

### f. *"Misuse" of the forklift*

Next, in their Motion In Limine #6, the Reinards seek exclusion of evidence of "misuse" as irrelevant, because, they contend, the correct inquiry is whether Mr. Reinard's use of the product was reasonably foreseeable.  They contend that the undisputed evidence at trial will be that Mr. Reinard was using the forklift in a reasonably foreseeable way.  They also argue that a reference to "misuse" is inflammatory.  Crown argues that "misuse" is not a distinct defense, but part of the analysis of comparative fault.  Thus, Crown argues that Mr. Reinard's misuse of the forklift, by causing the accident or placing his foot outside of the forklift operator's compartment, is highly probative on the issue of comparative fault.

I believe that each party is addressing only part of the applicable legal standard, because "misuse" involves an issue of "reasonable foreseeability."[4]  I also believe that

_____

[4] In *Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525 (Iowa 1999), the Iowa Supreme Court addressed the relationship between "misuse" and "reasonable foreseeability," as follows:

> Ordinarily, if mishandling or other alterations beyond the manufacturer's control render a product defective, the manufacturer is not liable. *Fell [v. Kewanee Farm Equip. Co.]*, 457 N.W.2d [911,] 918 [(Iowa 1990)] (citing Restatement (Second) of Torts § 402A cmt. g, at 351 (1965)). However, a manufacturer will remain liable for an altered

(Footnote continued . . .

21

> product if it is reasonably foreseeable that the alteration would be made and the alteration does not unforeseeably render the product unsafe. *Aller v. Rodgers Mach. Mfg. Co.*, 268 N.W.2d 830, 838 (Iowa 1978); *see also Crow v. Manitex, Inc.*, 550 N.W.2d 175, 180 (Iowa App.1996); *Smith v. Air Feeds, Inc.*, 519 N.W.2d 827, 831 (Iowa App.1994); *Hardy v. Britt–Tech Corp.*, 378 N.W.2d 307, 309 (Iowa App.1985).

*Leaf*, 590 N.W.2d at 530. The court then considered alleged misuse by the prior owner of a tire that was allegedly defective, as follows:

> Goodyear claims the tire showed signs of having been run flat or underinflated, and this constitutes misuse. Leaf says the issue is not whether there was misuse by running it flat or underinflated but whether such misuse was reasonably foreseeable to Goodyear. This foreseeability inquiry should rarely be determined as a matter of law. *Smith*, 519 N.W.2d at 831.

*Leaf*, 590 N.W.2d at 530. The court concluded that the jury was properly instructed, as follows:

> The requirement that the tire be free from defects at the time it left Goodyear's control includes the requirement that necessary precautions be taken to keep the tire free from defects for a normal length of time when handled or used in a normal manner. However, Goodyear is not responsible if the tire was delivered free from defects and later mishandling, changes or other causes beyond its control make the product defective, unless that mishandling, change or other cause beyond Goodyear's control was reasonably foreseeable by it.

*Leaf*, 590 N.W.2d at 530. The court concluded that the instruction was proper and that there was substantial evidence to support the jury's verdict for the plaintiff, where Goodyear's own expert testified that it was foreseeable that the type of tire at issue would be used when it was underinflated or flat, especially when run as an inside dual. *Id.* The court also concluded that the jury was not required to find that the plaintiff had abused

(Footnote continued . . .

22

"misuse," in and of itself, is not so inflammatory as to be a prohibited description; for example, it is likely less inflammatory than "abuse." *See* Iowa Civil Jury Instruction No. 400.1 (defining "fault" for comparative fault purposes as including "misuse of a product for which the defendant otherwise would be liable"). In this case, however, I conclude that evidence of "misuse" should be excluded on the ground that neither party requested "misuse" as a specification of comparative fault in the parties' Proposed Jury Instructions. Rather, they have identified "fault" as "negligence" and/or "defective design." *Compare* Plaintiffs' Proposed Jury Instruction No. 7A *with* Defendant's Proposed Jury Instruction No. 7B. Thus, "misuse" is simply not relevant in this case.

Therefore, the Reinards' Motion In Limine #6 is **granted.**

### g. *The BRC/SEA videos*

Next, in their Motion In Limine #7, the Reinards seek exclusion of the BRC/SEA videos of forklifts going off loading docks and tipping over. They argue this evidence is irrelevant and inflammatory, where Mr. Reinard did not have an off-dock or tipover accident; rather, he hit a pole. They also argue that the forklift in the videos is different from the forklift Mr. Reinard was using, so that it would have interacted differently with the loading dock, even in an off-dock event. The Reinards point out that their expert, Dr. Kerrigan, has identified various flaws in the testing shown, which used ATDs. Finally, they argue that the videos of the tests are graphic, with little probative value in this case, so that they should be excluded pursuant to Rule 403.

Crown argues that the Reinards misinterpret the relevance of this testing, which is to show potential injury during forklift accidents. Crown argues that jurors will have to determine whether the Reinards' alternative design poses risks. Crown argues this testing

---

the tire by leaving it connected to an air hose for some time after the bead was sealed, but on the ground that Goodyear's expert testified that the tire was not overinflated when it ruptured, not on the ground that over-inflation was foreseeable. *Id.*

shows such risks, including trapping the operator in the compartment in off-dock and tipover accidents. Crown argues that the videos will help the jurors see the types of events at issue in various kinds of forklift accidents and the severity of the possible injuries. Crown also argues that the Reinards will have the opportunity to challenge various issues in the videos during cross-examination.

I agree with Crown that the videos have some relevance in assessing the safety of the Reinards' alternative design in other kinds of accidents, which is, in turn, relevant to design decisions. Such videos may be "graphic," but if properly limited and used with proper instructions and explanations—including cross-examination to try to rebut the conclusions that Crown draws from them—they are neither so confusing nor so inflammatory that they should be barred altogether. FED. R. EVID. 402, 403 & Advisory Committee Notes; *Bell*, 761 F.3d at 912 (prejudice); *Valadez*, 758 F.3d at 982 (limiting instructions); *Lemon*, 239 F.3d at 972 (limiting the amount of evidence). The use of the videos, however, may be challenged during trial, for example, on the ground that it has become cumulative, or on the ground that foundation is lacking that Crown considered the videos in its design process or its review of forklift safety for this model or similar products.

The Reinards' Motion In Limine #7 is **denied.**

>    *h.*    ***Testimony about the relationship between doors and accidents***

I will consider the next several Motions In Limine as a group. In their Motion In Limine #8, the Reinards seek exclusion of evidence and argument that there have been fatalities and serious injuries caused by or contributed to by doors on stand-up forklifts, because they assert that Crown's witnesses have never been able to substantiate any injury associated with a door. In their Motion In Limine #9, they seek exclusion of evidence and argument that off-dock events and tipovers are as common as collision events with stand-up forklifts, because they contend that it is uncontradicted that the most common

kind of mishap for a stand-up forklift is a collision event, while off-dock and tipover events are rare. In their Motion In Limine #10, they seek exclusion of evidence and argument about the statistical likelihood of injury on a stand-up forklift, because data on forklift injuries is irrelevant, where the databases do not differentiate the kinds of forklifts or isolate just leg injuries associated with the lack of a safety door. In their Motion In Limine #11, they seek exclusion of evidence and argument about how the presence of a door would have caused injury or death in previous specific tipover and off-dock events, because no one has ever tried to recreate or scientifically study these events to see what would have happened had the operator who jumped off stayed on, or what would have happened had the operator who stayed on jumped off. In their Motion In Limine #12, they seek exclusion of evidence and argument that a door increases the likelihood of injury or death during a tipover or off-dock event for operators who choose to stay on the forklifts, because there is no evidence that a door has ever contributed to the cause of any forklift injury. In response to these motions, Crown asserts, in essence, that it will not offer unsubstantiated evidence or opinions and that it has the right to put on evidence that puts the Reinards' evidence in context.

As a general matter, the evidence at issue is too ill-defined for me to rule on its admissibility pretrial. For example, it seems strange to request exclusion of evidence that the Reinards contend does not exist. The Reinards will have the opportunity to challenge what any evidence demonstrates and the bases for any opinions at trial. The Reinards' Motions In Limine ##8-12 under this heading are **denied** for lack of sufficient specificity for me to rule on.

### i. *Evidence relating to OSHA standards*

I will also consider the next few Motions In Limine as a group. In their Motion In Limine #13, the Reinards seek exclusion of evidence and argument that OSHA has considered and rejected Mr. Sevart's or Mr. Berry's recommendations relating to doors,

because OSHA does not govern design, but employer/employee relationships, and did not consider and has no opinion on doors on forklifts in its rulemaking. In their Motion In Limine #14, they seek exclusion of evidence and argument that OSHA instructs employers to train operators to step off side-stance forklifts in tipover events as inapplicable to the forklift at issue here or to a forklift that had a door. In their Motion In Limine #15, they seek exclusion of evidence and argument that OSHA instructs employers to train operators to step off side-stance forklifts in off-dock events, because OSHA has never addressed off-dock events in its regulations. In their Motion In Limine #16, they seek exclusion of evidence and argument that OSHA prohibits doors as well as the code of federal regulations relating to OSHA forklift rule-making, because the OSHA regulations say nothing about doors and do not apply to forklift design. In their Motion In Limine #17, they seek exclusion of evidence and argument that a tipover is equivalent to an off-dock event from OSHA's point of view, because OSHA never considered off-dock events. In response, Crown asserts, in essence, that evidence relating to OSHA's regulations and determinations will be fairly presented and is clearly relevant to the safe design of a forklift to allow the driver to take the actions during an accident that OSHA recommends.

To the extent that Crown can show that it took OSHA's regulations and determinations into account in designing the forklift at issue, those regulations and determinations are relevant. FED. R. EVID. 402. Moreover, because the Reinards will have a fair opportunity to dispute what the OSHA regulations demonstrate (or do not demonstrate) about the safety of doors on the driver's compartment of a stand-up forklift, the OSHA regulations are not so confusing, misleading, or inflammatory on their face, as to warrant exclusion, and proper limitations on the use or amount of such evidence may be imposed to avoid confusion and prejudice. FED. R. EVID. 402, 403 & Advisory Committee Notes; *Bell*, 761 F.3d at 912 (prejudice); *Valadez*, 758 F.3d at 982 (limiting

instructions); *Lemon*, 239 F.3d at 972 (limiting the amount of evidence). What the Reinards argue has more to do with the weight that they believe the jury should give these standards than it has to do with whether the standards or the evidence related to the standards are admissible.

The Reinards' Motions In Limine ##13-17 are **denied.** The use of the OSHA evidence, however, may be challenged during trial, for example, on the ground that it has become cumulative.

### *j.* ***Doing what other manufacturers do***

In their Motion In Limine #18 under this heading, the Reinards seek exclusion of evidence or argument that Crown's forklifts do not have doors, because no other manufacturer's forklifts have doors. They argue that there is no evidence that Crown chose not to install a door based on what any of its competitors do. Thus, they argue that such evidence is irrelevant. Crown responds that the jury is entitled to consider industry-wide customs, practices, and design standards, citing cases indicating that industry custom is indicative of the state of the art, is a factor in determining the reasonableness of an alternative design, and it is also relevant to the manufacturer's conduct as it relates to punitive damages.

"Custom in the industry" is not the same as, but is relevant to, "state of the art." *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 622 (Iowa 2000); *Hughes v. Massey-Ferguson*, 522 N.W.2d 294, 295 (Iowa 1994). Here, I excluded evidence of "state of the art," above, in Section II.B.2.c, beginning on page 16. Nevertheless, Crown has pointed to other grounds on which "custom in the industry" is relevant in this case. *See, e.g., Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 718 (Iowa 2016) ("industry standards" may be relevant to the reasonableness of defendant's conduct in the circumstances of the case). Therefore, the Reinards' Motion In Limine #18 under this heading is **denied.**

### k. *NIOSH evidence and independent rejection of doors by NIOSH and OSHA*

I will consider the next two motions together. In their Motion In Limine #19, the Renards seek exclusion of evidence and argument relating to the National Institute For Occupational Safety and Health (NIOSH) and off-dock and tipover events, because NIOSH does not relate to product design and has never commented on doors on stand-up forklifts. In their Motion In Limine #20, they seek exclusion of evidence and argument asserting that NIOSH and OSHA, two federal agencies, have independently concluded that rapid, unobstructed egress from the rear of a stand-up rider forklift provides the best safety training for operators faced with a tipover accident, because it is misleading and false. Crown contends that NIOSH is the federal agency responsible for conducting research and making recommendations for the prevention of work-related injury and illness. Thus, Crown argues NIOSH's instructions and recommendations as to what steps employers should take in training forklift operators go to the Reinards' arguments that the driver compartment of the forklift should have had a door. Crown argues that, for the same reasons I should deny the Motions In Limine concerning OSHA discussed earlier, I should also deny Motion In Limine #20.

For the same reasons I denied the Reinards' Motions In Limine regarding OSHA evidence, above, Section II.B.2.i., beginning on page 25, I now conclude that the Reinards' Motion In Limine #19 and their Motion In Limine #20 are also **denied**. Again, what the Reinards argue has more to do with the weight that they believe the jury should give this evidence than it has to do with whether the evidence is admissible.

### l. *"Hearsay" from Crown's consultants*

In their Motion In Limine #21 under this heading, the Reinards seek exclusion of evidence and argument about what Crown's consultants have told Crown over the years, on the ground that such evidence is hearsay. The Reinards point out that this applies, in

particular, to Dan Dunlap, who will testify about what consultants told Crown. The Reinards assert that such statements of consultants are being offered for their truth, so they should be excluded pursuant to Rule 801, and the consultants will not be witnesses, so that they cannot be cross-examined. Crown argues that it should be allowed to offer evidence of its decision to seek the advice of outside experts to test its internal conclusion that enclosing the operator compartment of stand-up rider forklifts with doors would increase the risk of operator injury and death in tipover and off-dock accidents. Crown argues that this evidence speaks directly to its design decision-making process and shows the reasonableness of its decisions, whether the product is defective, and whether punitive damages are appropriate. Crown contends that reliance on what consultants told them falls outside the hearsay rule, because it is not offered for its truth.

I agree with Crown. I am unpersuaded by the Reinards' contention that the statements of consultants are hearsay, because I conclude that they are not offered for their truth, but to show Crown's state of mind and understanding about the safety of its design. FED. R. EVID. 801. Moreover, because Mr. Dunlap is an expert, he may rely on otherwise inadmissible information in reaching his opinions. FED. R. EVID. 703. Therefore, the Reinards' Motion In Limine #21 under this heading is **denied,** *but without prejudice* to challenges to particular statements as hearsay.

### m. *Evidence of design awards*

In their Motion In Limine #22 under this heading, the Reinards seek exclusion of evidence and argument that the design of the forklift has been given awards, on the ground that such evidence and arguments are irrelevant and misleading, particularly where neither the criteria of the awards nor whether the judges considered left leg injuries are known. Crown argues that receiving awards for overall design of the forklift goes directly to the question of whether its design was reasonably safe. Moreover, Crown argues, it goes to whether or not punitive damages should be awarded.

29

I agree that, as a hypothetical matter, the fact that a challenged design has won design awards may have some marginal relevance to the matters identified by Crown. On the other hand, unless the design awards specifically considered the presence or absence of a door on the forklift, they are more prejudicial than probative, because they suggest a decision on an improper basis. *See* FED. R. EVID. 403; *cf. Adams*, 867 F.3d at 911 (to be admissible, other similar instances evidence must be substantially similar). An award for aspects of the forklift design that have nothing to do with the presence or absence of a door do not suggest the inferences Crown wants to draw and would be misleading or confusing. Therefore, the Reinards' Motion In Limine #22 under this heading is **granted**. Crown may not offer any evidence of "design awards," unless it establishes, outside the presence of the jury, that the design award specifically considered the presence or absence of a door on the forklift.

### n. Crown's "primary concern" is safety

In their Motion In Limine #23 under this heading, the Reinards seek exclusion of evidence and argument that safety is Crown's "primary concern," because they argue that whether or not safety is Crown's "primary concern" has nothing to do with whether its product is defective. Crown argues that this motion fails to identify the specific evidence that the Reinards seek to exclude. Moreover, Crown argues that it is entitled to rebut evidence and argument that it did not adequately consider safety in the design of its forklift. Again, what the evidence at trial shows about the extent to which Crown actually considered safety in the design of its forklift is far more probative than any characterization of safety as Crown's "primary concern." While I conclude that an individual employee of Reinard will be allowed to testify that a primary concern of his or her job was safety, no witness will be allowed to testify as to a *corporate* priority. Furthermore, to the extent that any business documents may indicate that Crown's "primary concern" was safety, such documents will need to be reviewed, outside the

presence of the jury, before I can determine their admissibility. Therefore, the Reinards'
Motion In Limine #23 under this heading is **granted**.

> ### o. *ATD testing shows catastrophic injuries will result*

In their Motion In Limine #24 under this heading, the Reinards seek exclusion of
evidence and argument, based on ATD testing, to the effect that going off a loading dock
or tipping over in a stand-up forklift will result in catastrophic injuries. They argue that
no witness identified by Crown has been able to opine that the ATD testing demonstrates
that a human who stays on a tipping or off-dock forklift will be catastrophically injured,
because such tests are not predictive, and Dr. Kerrigan has demonstrated their flaws.
Crown contends that this motion should be denied for the same reasons that I should deny
the Reinards' motion regarding BRC/SEA testing involving ATDs.

Again, evidence of ATD testing, if properly limited and used with proper
instructions and explanations—including cross-examination to try to rebut the conclusions
that Crown draws from that testing, such as whether such testing is "predictive" or shows
only "potential"—is neither so confusing nor so inflammatory that it should be barred
altogether. FED. R. EVID. 402, 403 & Advisory Committee Notes; *Bell*, 761 F.3d at 912
(prejudice); *Valadez*, 758 F.3d at 982 (limiting instructions); *Lemon*, 239 F.3d at 972
(limiting the amount of evidence). As I have observed before, what injuries, if any, the
testing shows are potentially caused by certain accidents, rather than characterizations of
those injuries—as "catastrophic" or anything else—is what is relevant. The Reinards'
Motion In Limine #24 under this heading is **denied**.

> ### p. *ANSI/ASME standards*

I will consider the next two motions together. In their Motion In Limine #25, the
Reinards seek exclusion of evidence and argument that ANSI/ASME B56.1 standards are
mandatory or government approved. The Reinards argue that the standards are voluntary
and, moreover, do not prohibit doors. They also argue that Crown's contention that the

ANSI/ASME standards are adopted into OSHA regulations does not make them statutes, nor do the ANSI/ASME standards "insinuate" that doors are prohibited. In their Motion In Limine #26, the Reinards seek exclusion of evidence and argument that ANSI/ASME has considered, and voted against, recommendations for doors on stand-up forklifts, because the standards are voluntary and, if any evidence about these standards is relevant at all, only the standards themselves, not the arguments made during the process leading to their adoption, would be relevant, and any assertion of the reasons any representative voted on any issue pertaining to the standards would be mere speculation.

In response, Crown argues that it will appropriately present and rely upon the ASME/ANSI standards for what they are. Crown also argues that, on two separate occasions, the ASME/ANSI B56.1 Subcommittee expressly considered, and flatly rejected, proposals to require that stand-up rider forklifts be equipped with doors, which is the Reinards' proposed alternative design and the precise issue at the center of this case, so those votes are clearly relevant. Crown also argues that subcommittee records are properly presented as business records.

As I concluded with OSHA standards, above, ANSI/ASME standards are relevant. FED. R. EVID. 402. Moreover, the Reinards will have a fair opportunity to dispute what the ANSI/ASME standards demonstrate (or do not demonstrate) about the safety of doors on the driver's compartment of a stand-up forklift; these standards are not so confusing, misleading, or inflammatory on their face, as to warrant exclusion; and proper limitations on the use or amount of such evidence may be imposed to avoid confusion and prejudice. FED. R. EVID. 402, 403. On the other hand, minutes of meetings, offered to demonstrate bases for the decisions of the standards committee or subcommittee, such as when and why the committee or subcommittee rejected a standard that would favor the Reinards' alternative design, are not admissible. Because the accuracy of the minutes is not certain, offering them invites a mini-trial, including evidence on both side of the ultimate decision

32

and arguments about the rationale for the final standards; thus, they are unduly confusing and misleading or would waste significant time. FED. R. EVID. 403. That said, in the cross-examination of Mr. Berry, one of the Reinards' experts, who was a member of the relevant committee, Crown may ask if he proposed a standard that required doors or operator enclosures on forklifts and whether his proposed standard was adopted.

Thus, the Reinards' Motions In Limine ##25-26 are **granted** as to any suggestion that those standards are mandatory and any evidence of the purported rationale for or the scope of any ANSI/ASME standards from minutes of committee or subcommittee meetings or testimony about them.

### q. Injury statistics

Finally, in their Motion In Limine #27 under this heading, the Reinards seek exclusion of evidence and argument about the statistical likelihood of injury in other activities and how using a Crown forklift compares to those risks. They explain that this challenge is directed at testimony by Dr. Marais about the statistical likelihood of injury in a variety of activities and that "workplace injuries occur in virtually all occupations . . ."; that operators of Crown forklifts have low comparative rates of injuries; that injuries can also occur in cars; that collision accidents decreased after OSHA required training; that left-leg injuries have decreased after training was implemented; that the number of forklifts with doors is small; and about the number of injuries per million hours. The Reinards argue that none of this evidence is relevant and that it does not relate to an issue to be decided by the jury as outlined in Iowa product liability law. Crown argues that Dr. Marais's testimony will put into proper context the data used by the Reinards' expert, Mr. Berry. Crown argues that the Reinards plan to introduce evidence of prior accidents involving stand-up forklifts, so it should be permitted to put those accidents into context with evidence of the extent to which the same product has been used and how that compares to other comparable situations.

In my view, with only two exceptions, the opinions listed on pages 3 and 4 of Dr. Marais's report are not admissible in the first instance, because, standing alone, they are not likely to aid the trier of fact to determine a fact at issue. FED. R. EVID. 402, 702(a). The exceptions are Dr. Marais's opinion (f), that, because of the relative cumulative hours of operation, the statistics do not establish that stand-up forklifts *with* doors have a risk of injury lower than that of stand-up forklifts *without* doors, and his opinion (h), that, in real-world off-dock and tipover accidents, the rate of serious or fatal injuries among operators who exited the stand-up forklifts has been substantially lower than the rate among operators who stayed with the forklift. These opinions are relevant, because they address opinions offered, for example, by the Reinards' expert, Mr. Berry. Although opinion (h) relies on data starting in 1978, and it is not clear that all the forklifts involved in the accidents are the same design as the forklift used by Mr. Reinard, that factor goes to the weight, rather than the admissibility, of opinion (h).

Thus, the Reinards' Motion In Limine #27 under this heading is **granted** as to Dr. Marais's opinions (a)-(e) and (g), but **denied** as to opinions (f) and (h).

### C. *Proposed Limiting Instructions*

As to several of the matters raised in the parties' Motions In Limine, I observed that proper limiting instructions would eliminate the potential for prejudice. Therefore, to the extent that parties can now foresee the need for specific limiting instructions, they must draft proposed instructions, confer and agree on them to the extent possible, then submit their proposals for my final determination and incorporation into the jury instructions. Such proposed limiting instructions must be submitted **not later than Wednesday, July 11, 2018.**

### III. *CONCLUSION*

Upon the foregoing, I conclude as follows:

34

1.     Crown's June 11, 2018, Motions In Limine (docket no. 66) are **granted in part and denied in part**, as set out more specifically, above; and

2.     The Reinards' June 11, 2018, Master Motions In Limine (docket no. 67) are **granted in part, denied in part, and reserved in part**, as set out more specifically, above.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after completion of trial or any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 5th day of July, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA