# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

DUSTIN REINARD, Individually and as injured Parent of B.R. and K.R., and MISTY REINARD,

        Plaintiffs,

vs.

CROWN EQUIPMENT CORP.,

        Defendant.

No. C 16-2094-MWB

**OPINION AND ORDER REGARDING THE PLAINTIFFS' MOTION FOR NEW TRIAL**

_____

    This case arises from a collision at a Target warehouse between a stand-up forklift operated by Dustin Reinard and a steel pole. Mr. Reinard suffered serious injuries to his left leg resulting in its amputation. At trial, Mr. Reinard and his wife, Misty Reinard, sought damages for Mr. Reinard's injury, loss of spousal consortium, and loss of parental consortium on a design defect claim against Crown Equipment Corporation, the manufacturer and seller of the forklift. The key dispute at trial was whether the forklift that Mr. Reinard was operating should have had a door to prevent his foot from leaving the operator's compartment. Crown contended that a door would actually increase the potential for serious injuries in other accidents, such as off-dock or tipover accidents. Evidence on this key dispute included results of testing, with videos, for stand-up rider forklifts using anthropomorphic test devices (ATDs, better known as crash test dummies) and Mathematical Dynamic Modeling (MADYMO), which uses mathematical models to show the effect of forces on the human body during accidents. After eight days of evidence and argument, the jury returned a defense verdict on the ninth day of trial.

    This was far and away the best tried jury trial in my twenty-four years as a district court judge trying cases spanning six federal districts from the Middle District of Florida

to the District of the Northern Mariana Islands.  Counsel were exceptionally well prepared, unfailingly civil and professional, and unsurpassed trial lawyers in terms of skill, expertise, and cooperation with each other and me.  This was a very close case and simply could not have been better tried.

This case is now before me on the plaintiffs' August 27, 2018, Motion For New Trial, based on their contention that admission of the ATD/MADYMO evidence was erroneous and harmful.[1]  On a new trial motion pursuant to Rule 59 of the Federal Rules of Civil Procedure,

> "[T]he key question [is] whether a new trial is necessary to prevent a miscarriage of justice." *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013). We will not disturb the jury's verdict unless the appellants show "the district court clearly abused its discretion by admitting the evidence" and "the error[s] prejudicially influenced the outcome of the trial." *Regions Bank v. BMW N. Am., Inc.*, 406 F.3d 978, 980 (8th Cir. 2005); *see also* Fed. R. Civ. P. 61 (explaining "no error in admitting or excluding evidence … is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order" unless the error "affect[s] any party's substantial rights").

*Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 807 (8th Cir. 2016).

Here, if I improperly admitted the ATD/MADYMO evidence, as the Reinards argue in their Motion For New Trial, I agree that the admission of this evidence was prejudicial and entitles the Reinards to a new trial.  I am virtually certain that this evidence substantially affected the jury's deliberations and verdict.  Indeed, I would be shocked if

---

[1] Although the plaintiffs requested oral arguments on their Motion For New Trial, I find that the parties' written and oral arguments concerning the ATD/MADYMO evidence, in motions in limine, during trial, and in relation to the Motion For New Trial, comprehensively address the issues presented.  Therefore, I have not found additional oral arguments to be necessary.

2

it did not.  The ATD/MADYMO evidence was the foundation of Crown's defense.  That evidence was also the most critical in the case, because many of Crown's trial witnesses relied on.  I agonized over the issue of the admissibility of this evidence in Reinard's Motion In Limine and Crown's resistance.  I read the various cases cited by the parties on both sides of the issue and ultimately admitted this evidence.  I found it to be a very close call.  Perhaps that was error—perhaps not.  In the hindsight that a post-trial review allows, perhaps the better course would have been to allow Crown's witnesses to testify about Crown's reliance on this testing, but not to allow the videos of the testing to be shown to the jurors.  I don't recall either party suggesting this resolution, nor did I think of it.  Such an approach might have been a better balance of the central concerns of Rule 403 of the Federal Rules of Evidence, which requires a balancing of the probative value of evidence against its potential for unfair prejudice and other important trial concerns.  The videos were powerful; I urge the Eighth Circuit Court of Appeals, should this case be appealed, to review them very carefully.  Nevertheless, for the reasons stated in the Motion In Limine ruling, I believe I properly admitted the ATD/MADYMO evidence—but I am certainly not free from doubt.

THEREFORE, the plaintiffs' August 27, 2018, Motion For New Trial (docket no. 110) is **denied**.

**IT IS SO ORDERED**.

**DATED** this 15th day of October, 2018.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA